# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

KRIS T. DANIEL,                )
                               )
            Plaintiff,         )
                               )
v.                             ) Case No. CIV-07-386-KEW
                               )
MICHAEL J. ASTRUE,             )
Commissioner of Social         )
Security Administration,       )
                               )
            Defendant.         )

## OPINION AND ORDER

Plaintiff Kris T. Daniel (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further consideration.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on July 22, 1965 and was 41 years old at the time of the ALJ's decision. Claimant obtained a GED. Claimant previously worked as a receptionist. Claimant alleges an inability to work beginning October 28, 2004 due to anxiety, depression and pain.

### Procedural History

On October 28, 2004, Claimant protectively filed for

supplemental security income under Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application for benefits was denied initially and upon reconsideration. On April 17, 2007, Claimant appeared at a hearing before ALJ Deborah L. Rose in McAlester, Oklahoma. On June 19, 2007, the ALJ issued an unfavorable decision, finding Claimant was not disabled during the relevant period. On September 21, 2007, the Appeals Council denied review of the decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that while Claimant suffered from severe impairments, they did not meet a listing and Claimant retained the residual functional capacity to perform at all exertional levels, with limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to properly evaluate Claimant's credibility; and (2) failing to apply the correct legal standards in arriving at Claimant's RFC and to make a determination on Claimant's RFC which is supported by substantial evidence.

### Evaluation of Claimant's Credibility

Claimant first challenges the ALJ's findings as to her credibility. The ALJ found Claimant's statements regarding the intensity, persistence, and limiting effects of her continued depression and anxiety were not credible. The ALJ largely bases her findings upon a conclusion Claimant has engaged in "drug seeking behavior" which affected her credibility. (Tr. 19). The ALJ concedes Claimant has been treated for mental health problems in the past, but concludes she has not always taken her medication. (Tr. 18).

The ALJ also finds "there is evidence that claimant has abused prescription drugs." Id. The ALJ first bases this finding upon a January 16, 2004 letter from Claimant's treating physician, Dr. Nestor Pinaroc, which terminated his patient/physician relationship with Claimant because she was "non-compliant with prescribed medications." (Tr. 148). In a prior note in Dr. Pinaroc's file, he wrote counseled Claimant after she apparently obtained Ambien "too early from several different pharmacies and a couple of different names." (Tr. 152). He stated Claimant admitted to using the Ambien "more than the prescribed dosage." Id.

The next reference to the medical record in the ALJ's decision which affected Claimant's credibility was the visit to the emergency room on May 1, 2004, resulting when Claimant fell at a skating rink. Claimant complained of head and neck pain, low back

5

pain, and left ankle pain. X-rays were negative. (Tr. 19). The emergency room assessment, however, revealed some midline C-spine tenderness to palpation C2-C4 and an abrasion to the occiput and crown of the head as well as mild left ankle tenderness to palpation. (Tr. 187). The emergency room physician, Dr. Jeremy Bearden, concluded Claimant sustained a closed head injury with loss of consciousness and left ankle pain. (Tr. 188). These latter facts were not cited by the ALJ.

Then, on July 20, 2004, Claimant presented to Dr. Matthew Haag requesting pain medication and Ambien for sleep. The ALJ found it significant Claimant told Dr. Haag she had broken her ankle in April and worn a walking boot and refused an x-ray. The ALJ concluded this behavior was an attempt to obtain pain medication. Yet, pain medication was prescribed by Dr. Haag, the medical professional evaluating Claimant at the time. (Tr. 19).

The ALJ cites to Claimant's August 2, 2004 visit to Dr. Michael Fergeson requesting medication refills, stating she had lost the medication while on vacation. (Tr. 19). However, the ALJ never inquired of Claimant in order to assess the veracity of her explanation of the incident at the administrative hearing. Instead, the ALJ chose to draw conclusions from the medical record which require a considerable degree of speculation.

In declining to accept Claimant's credibility, the ALJ next points out the medication refills Claimant obtained from Dr. Haag

on September 14, 2004. The ALJ noted Claimant's denial of taking medication when she received a psychiatric evaluation on October 6, 2004, acknowledging Claimant complained of "crying spells and feeling tired, as well as sleep problems." (Tr. 19). Her psychiatrist prescribed Lexapro and Ambien. Claimant was advised to continue taking the medications at a November 4, 2004 visit. Id.

On November 9, 2004, Claimant requested refills again from Dr. Haag. The ALJ then makes perhaps the most curious and unsubstantiated comment in the opinion by stating "[t]here is no evidence that claimant told Dr. Haag that she was getting medication (Ambien) from North Rock or Dr. Ferguson, nor is there evidence that she told her psychiatrist at North Rock that she was getting medication from Dr. Haag or Dr. Ferguson." Id. Of course, it is equally true that there is no indication in the record that she did not tell these physicians of one another.

The ALJ may be correct that Claimant is a prescription medication abuser. However, she may not use speculation to arrive at this conclusion for the purpose of rejecting Claimant's statements concerning her alleged impairments as being not credible. Certainly, it is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

"Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

Instead of engaging in this credibility analysis based upon observed conduct or testimony, the ALJ chose to draw conclusions from Claimant's behavior with her physicians which affected her credibility determination. In this regard, the ALJ failed to affirmatively link evidence in the record with the findings on credibility that she ultimately made. At the very least, the ALJ should have made appropriate inquiry to assess Claimant's

8

credibility at the hearing rather than engaging in inappropriate speculation. On remand, the ALJ shall re-evaluate Claimant's credibility based upon evidence present in the record rather than evidence not present in the record and upon observed conduct which may readily bear upon Claimant's credibility.

## RFC Evaluation

Claimant next contends the ALJ failed to consider evidence of her back pain and plantar fasciitis in assessing her RFC. The ALJ only considered Claimant's mental impairments as severe because Claimant testified at the hearing that her back hurt only once in a while and she took over the counter medications for treatment. (Tr. 17). However, the medical record reveals findings by treating physicians of tender to palpation in the lumbar musculature on the right side with negative leg lift bilaterally and some spasm with trigger point. (Tr. 209). She was also diagnosed with lumbar pain and plantar fasciitis in a February 4, 2005 examination. (Tr. 259). Moreover, the ALJ rejected the opinion of the agency consultant, who noted Claimant experienced tenderness to palpation of the lumbar spine and lumbar pain with straight leg raising at 48 degrees. (Tr. 289). As a result, the consultant limited Claimant to only occasional stooping. (Tr. 290). While it is certainly within the province of the ALJ to reject the agency consultant's conclusions, it is less compelling when the consultant's conclusions are supported by other medical evidence from treating

sources. It appears the ALJ largely rejected the consultant's opinions based upon Claimant's testimony. Interestingly, the ALJ found Claimant's testimony credible when it supported the ALJ's rejection of disability but yet found it incredible when it supported a finding of disability. This inconsistency requires re-evaluation of Claimant's RFC on remand.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

IT IS SO ORDERED this 24th day of March, 2009.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE